# Oxford Lake Line Co. v. Stedham.

*Action against a Railroad Company for Personal Injuries.*

1. *Averments of negligence in a complaint.*—In an action against a railroad company to recover damages for personal injuries, inflicted by a mule driven by the plaintiff becoming frightened at the approach of one of defendant's trains, a complaint which alleges "that the mule became frightened at said engine and cars owing to the negligence of defendant's employés in the running and management of said engine and cars," contains a sufficient averment of negligence, and is not demurrable.

2. *Escape of steam from railroad engine no cause of action.*—Where steam is necessarily allowed to escape from a railroad engine, in order to slacken the speed of the train, for the purpose of turning a sharp curve in the track, the company is not liable for injuries occasioned by a mule, driven on a public road running parallel to the railroad track, becoming frightened at the noise of the escaping steam and running away, provided the escape of steam was not more than was

[Oxford Lake Line Co. v. Stedham.]

usual, and such as was necessarily incident to the control of the engine at that time, and was not recklessly or wantonly caused by the employés of the railroad company.

APPEAL from the City Court of Anniston.

Tried before the Hon. B. F. CASSADY.

This was an action brought by William Stedham against the Oxford Lake Line, to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant's employés.

The allegations of negligence, as contained in the first count of the complaint, are as follows : "That on the said day of August, 1891, plaintiff was riding from Oxford eastward in a buggy, drawn by a mule hitched thereto, along the public highway in the town of Oxford, about one-quarter of a mile east of the business block thereof, where the public highway and the Oxford Lake Line run side by side, when he (the plaintiff) was overtaken by the engine and cars running on said line, and that just as they were almost even with, or in seven or eight yards of plaintiff, the engineer thereof, with gross recklessness and negligence, unnecessarily caused the steam to escape from the engine, the sight and noise of which frightened said mule, and caused him to run away with the buggy, and plaintiff was thereby thrown from said buggy, and greatly injured; that his collar bone was badly injured, his right arm partly paralyzed, and his spine injured;" for which injuries plaintiff brings said suit.

The allegations of negligence as contained in the 6th count, after setting up the fact of the defendant's mule becoming frightened and running away, are as follows : "That the mule became frightened at said engine and cars owing to the negligence of the defendant's employés in the running and management of said engine and cars, to the great damage of the plaintiff as aforesaid," &c. The grounds of the demurrer to this last count of the complaint are substantially as follows : 1st. That it does not sufficiently appear that plaintiff was injured by reason of defendant's negligence. 2d. That the defendant is not liable for the fright plaintiff's mule caused by the use and running of its cars. 3d. That the defendant's negligence as alleged in the said sixth count is too remote. These demurrers were overruled.

The facts and circumstances of the accident are sufficiently stated in the opinion.   Upon the introduction of all the evidence the court, at the request of the plaintiff, gave several charges, to the giving of each of which the defendant separately excepted, but it is not deemed necessary to set them out in detail.   The defendant requested, among others, the following written charge, and separately excepted to its refusal : "If the jury believe the evidence, they must find for the defendant."

There was judgment for the plaintiff.   The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

J. J. WILLETT, for appellant.

JOHN F. METHVIN and KELLY & SMITH, contra.

HARALSON, J.—There were originally five counts in the complaint, to which, by amendment, a sixth was added.   The defendant demurred to each count, but before the demurrer was passed on, the plaintiff amended his complaint by striking out all the counts except the 1st and 6th, the demurrers to which were overruled, and defendant took issue on them.   In the written agreement of appellant's counsel filed in the cause, it is admitted that the first count is a good one, and the assignment of error based on its overruling is waived.   The averments of negligence in the 6th count are such as have many times been held to be sufficient.—S. & N. A. R. R. Co. v. Thompson, 62 Ala. 500; Western R. R. Co. v. Lazarus, 88 Ala. 453, 6 So. Rep. 877; E. T. V. & G. R. R. Co. v. Watson, 90 Ala. 41, 7 So. Rep. 813; Stanton v. L. & N. R. R. Co., 91 Ala. 3ธ2, 8 So. Rep. 798; Ensley R. R. Co. v. Chewning, 93 Ala. 24, 9 So. Rep. 458.

The principles upon which this case rests have been well settled.   It is laid down by Pierce, in his work on Railroads, that "The authority to operate a railroad includes the right to make the noises incident to the movement and working of its engines, as in the escape of steam and rattling of cars ; and also the right to give the usual and proper admonitions of danger, as in the sounding of whistles and the ringing of bells.   It is, therefore, not liable, while exercising its right in a lawful and reasonable manner, for injuries occasioned by horses, when

being driven upon the highway, taking fright at such noises. But, if the injury resulting from the fright would not have happened, but for a breach of duty by the company, it will be liable for the injury."—Pierce on Railroads, 348. Rorer states the principles to the same effect, and adds : "But if the acts of the servants occasioning the fright are wanton and malicious, and be done in the discharge of their business by using the appliances of the company, such as wanton whistling of the engine, and the reckless discharge of steam, the company will be liable."—Rorer on Railroads, 704 (12).

In *Phil. W. & B. R. R. Co. v. Stinger*, 78 Pa. St. 225, in a case similar to this, it is said : "It may be safely assumed, that the company is not liable for injuries resulting from the use of its cars, where due care is exercised. The noise of a rapidly moving train, as well as the sound of the whistle, may alarm a horse, and cause an accident; whether such accident imposes a liability upon the company to make compensation in damages, must depend, to a great extent, upon the fact, whether it was the result of a want of proper care on the part of the persons in charge of such train." In that case, the fright and running away of the horse and the consequent injury to the plaintiff, was alleged to have been occasioned by the unnecessary and improper blowing of the whistle of the engine, and it was held, that the mere fact of the whistling furnished no presumption of negligence, inasmuch as the whistle was in general use on all roads operated by steam, and was necessary and proper to be used; but whether or not it was used in such an improper, reckless or wanton manner as to amount to negligence, was a subject of legitimate inquiry, to be submitted under all the facts of the case to the jury.

In *Stanton v. L. & N. R. R. Co.*, *supra*, the foregoing principles received approbation at our hands, and it was further held that, "as the railroad corporation has the right to use its track, and make the required signals at a public crossing, and all the usual noises incident to the running and moving of its trains, it was incumbent on the plaintiff to show the blowing off of steam and the making of the noise complained of were unnecessary, and recklessly or wantonly done, or with the intention to frighten the mare."

The evidence in this cause showed, without contradiction, that the plaintiff, at the time he was injured, was riding in a buggy with another party, drawn by a mule, returning home from the town of Oxford; that the mule was a gentle one, had never run away before, but would some times shy or dodge; that the public highway he was travelling ran parallel with a street in said town, along which the defendant's railroad ran, but how far apart is not shown, further than that at the point of the accident the track came within about thirty feet of the public road the defendant was travelling, and at that point, it turned by a sharp curve to the right, and ran away from said road; that the engine of the defendant's train was under the management of a skillful and competent engineer; that as the train was approaching said curve, it was running about six miles an hour, and steam was being blown off under the engine, at which plaintiff's mule took fright, ran off, threw him out of the buggy and injured him. The evidence on the part of the defendant showed, that it was the invariable custom of the engineer, in approaching said curve, to let off steam to slow up in making the curve; that he did not allow any more steam to escape than was necessary or customary. And the engineer swore, he had no idea or thought of frightening plaintiff's mule. There is nothing in the plaintiff's evidence to contradict that offered by defendant, or at variance with it, unless it be a statement by one Brown, examined by the plaintiff. He was an engineer, and the statement to which we refer is, "that witness had been on the car going to Oxford Lake many times, and did not know any place where it was necessary to let off steam." This statement was, in effect, that the witness did not know of or remember the curve in this railroad, at the time he testified. He says nothing about the curve in his testimony, and the other undisputed evidence in the cause shows it was a very sharp one. The engineer states in reference to it, "That said curve, near which the accident occurred, was and is a very sharp curve, and persons could not be seen on the track ahead, until said curve had been entered." It was his duty to slow up and make that turn in the track with great caution. As we said, in a recent case touching this matter, we may here repeat, that in running a train where a curve is to be turned, and where the view is ob-

structed, "the sharper the curve the greater the care with which trains as to their speed should be operated, to prevent the liability to encounter obstacles hidden by reason of the curve. Where any thing suggests care to avoid peril and danger to others, the higher the duty increases to observe it."—*Birmingham Min. R. R. Co. v. Harris*, 98 Ala. 326. So, there is nothing in the evidence of this witness to dispute or set aside the other undisputed evidence in the cause,—that the train of defendant was being operated at the time by a careful engineer, in a prudent manner, and with no more noise or escape of steam than was usual and necessarily incident to its movement. The plaintiff's injury arose from no negligence of the defendant's employés, and was an accident for which defendant is in no way responsible.

The general charge, as requested by defendant, should have been given.

Reversed and remanded.